IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIMBACH COMPANY LLC<br>13261 Mid Atlantic Avenue<br>Laurel, MD 20708<br><br>    Plaintiff,<br><br>v.<br><br>TEN HOEVE BROTHERS, LLC<br>25 Powers Drive<br>Meriden, CT 06451<br><br><u>SERVE</u>:<br>Superintendent of Corporations,<br>Department of Consumer<br>and Regulatory Affairs<br>Business and Professional Licensing<br>Administration<br>Corporations Division<br>1100 4th Street, SW<br>4th Floor<br>Washington, DC 20024<br>(designee of Mayor Vincent Gray),<br> pursuant to D.C. Code<br>§29-104.12(d)<br><br>    Defendant. | Case Number |

## COMPLAINT

Limbach Company LLC ("Limbach"), by its undersigned counsel, hereby sues Ten Hoeve Brothers, LLC ("Ten Hoeve") and for its causes of action hereby states as follows:

    1.    Limbach is a Delaware limited liability company with its principal place of business in Pennsylvania, and a local office in Laurel, Maryland.

1

2. Upon information and belief, Ten Hoeve is a Connecticut limited liability company with its business place of business at 25 Powers Drive, Meriden, Connecticut 06451.

3. Ten Hoeve is a foreign corporation that is or has performed work in the District of Columbia. Ten Hoeve is not registered with the District of Columbia Department of Consumer and Regulatory Affairs. Because Ten Hoeve has performed work in the District of Columbia without registration as required by the laws of the District of Columbia, service of process on the Mayor is appropriate. The Mayor has delegated acceptance of service of process to the Superintendent of Corporations.

4. W.L. Gary Company, Inc. ("Gary") is a District of Columbia corporation with its principal place of business at 225 Vine Street, N.W., Washington, DC 20012.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of Seventy Five Thousand Dollars ($75,000.00) exclusive of interest and cost and is between citizens of different states.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the District of Columbia is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

7. On November 18, 2011, Smoot/Gilbane Joint Venture (the "General Contractor") entered into a contract with the District of Columbia government for construction work at Dunbar Senior High School, located at 101 N. Street, N.W., Washington, DC (the construction work at Dunbar Senior High School shall be referred to as the "Project;" said contract shall be referred to as the "Prime Contract").

8. On or about January 30, 2012, Limbach entered into a subcontract with the General Contractor to complete certain of the work within the scope of the Prime Contract, including plumbing work (said contract shall be referred to as the "Principal Subcontract").

9. On or about October 13, 2012, W.L. Gary Company, Inc. ("Gary") entered into a subcontract, numbered 124201-010-012-4, with Limbach, for the completion of certain plumbing work within the scope of the Principal Subcontract (said subcontract shall be referred to as the "Limbach/Gary Subcontract").

10. Gary entered into a Purchase Order Pursuant to a "Master Subcontract" dated November 12, 2012, with Ten Hoeve Brothers, LLC for the completion of certain of that work within the scope of the Limbach/Gary Subcontract, including the completion of a rainwater harvesting system, as specified in the Prime Contract documents (said Purchase Order including the terms and conditions of the incorporated Master Subcontract shall be referred to as the "Gary/Ten Hoeve Subcontract").

11. Although Ten Hoeve has represented that it has completed the work under the Gary/Ten Hoeve Subcontract in a manner consistent with the terms of the Prime Contract, it has in fact not completed said work.

12. Ten Hoeve has knowingly and purposefully misrepresented that it installed an approved pre-filter as part of the rainwater harvesting system as specified under the Prime Contract to be manufactured by KriStar Enterprises, Inc. Ten Hoeve in fact installed a different pre-filter and has failed to install the approved pre-filter despite demand from Gary and Limbach.

13. Ten Hoeve entered into purchase and/or service agreements with certain vendors, including Stone Shooters, Inc., Crane Service Co., Inc., K&K Adams, Inc., and Icon, in furtherance of the work required by the Gary/Ten Hoeve Subcontract but Ten Hoeve has failed or refused to make payment to said vendors out of the proceeds of prior payments to Ten Hoeve from Gary (the resulting claims of said vendors shall be referred to as the "Outstanding Claims").

14. Ten Hoeve has failed to pay the Outstanding Claims despite demand from Gary.

15. Said vendors have made or have indicated that they were prepared to make claims against Gary's or Limbach's surety bonds because of Ten Hoeve's failure to meet its obligations to the vendor.

16. Limbach and Gary executed an Assignment Agreement on or about July 14, 2014, assigning from Gary to Limbach all rights of action of any nature whatsoever that Gary may have against Ten Hoeve arising under the Gary/Ten Hoeve's Subcontract to pursue in Limbach's own name pursuant to District of Columbia Municipal Code § 28-2303 and § 28-2304, including Gary PCO No. 12040.

17. Limbach has resolved the Outstanding Claims and has taken assignment of and is subrogated to all rights of action of said vendors against Ten Hoeve.

18. Limbach has resolved to the satisfaction of the General Contractor the issues related to the pre-filter in the rain water harvesting system components that was improperly installed by Ten Hoeve by removing and replacing the improper pre-filter installed by Ten Hoeve.

## COUNT I

### BREACH OF CONTRACT

19. The allegations contained in Paragraphs 1 through 18 above are incorporated herein by reference as if fully set forth.

20. Ten Hoeve breached the provisions of the Gary/Ten Hoeve Subcontract by failing to properly perform its work in accordance with the Prime Contract documents and by failing to pay the Outstanding Claims.

21. Gary has been damaged as a result of that breach of contract by Ten Hoeve.

22. Gary's rights of action have been assigned to Limbach.

## COUNT II

### SUBROGRATION/ASSIGNMENT – OUTSTTANDING CLAIMS

23.     The allegations contained in Paragraphs 1 through 22 are incorporated herein by reference as if fully set forth.

24.     Limbach, as principal, and Arch Insurance Company, as surety, issued a payment bond dated August 30, 2012 in connection with the Project and the Principal Subcontract.

25.     Gary, as principal, and Western Surety Company, as surety, issued a payment bond dated October 16, 2012 in connection with the Project and the Limbach/Gary Subcontract.

26.     Both Limbach and Gary received claims under the bonds issued in connection with the Project.

27.     Pursuant to the Assignment Agreement entered into between Limbach and Gary, Limbach resolved the Outstanding Claims pursuant to the obligations of the bonds.  In exchange for and in consideration of resolution of the Outstanding Claims, Limbach accepted assignments of the Outstanding Claims.

28.     Limbach is assignee of and is subrogated to the rights of the vendors who provided labor and/or materials for the Gary/Ten Hoeve Subcontract.

29.     Ten Hoeve received payment from Gary, from which payment Ten Hoeve was obligated to pay the vendors who had made the Outstanding Claims, but failed to pay those vendors as required by the terms of the Gary/Ten Hoeve Subcontract.

30.     Pursuant to its rights of subrogation and assignment, Limbach is entitled to assert against Ten Hoeve, in Limbach's own name, the rights to payment for Ten Hoeve's vendors for the Outstanding Claims that were paid by Limbach pursuant to its obligations under its payment bond.

## COUNT III

## **FRAUD**

31.     The allegations contained in Paragraphs 1 through 30 above are incorporated herein by reference as if fully set forth.

32.     Ten Hoeve owed a duty to Gary and to Limbach to perform its work in accordance with the Prime Contract documents and to make payment to its vendors.

33.     Ten Hoeve agreed, pursuant to the terms of the Gary/ Ten Hoeve Subcontract, that it would supply and install a KriStar FloGard Dual Vortex Catch Basin, as required by the Prime Contract.

34.     The KriStar FloGard Dual Vortex Catch Basin was specified in the contracts because it was determined to be appropriate for the rainwater system, and thus its specification was material to the performance of the contract and to proper completion of the Project.

35.     Ten Hoeve falsely represented to Gary and Limbach that it was supplying and installing a KriStar FloGard Dual Vortex Catch Basin as part of the rainwater harvesting scope of work under the Gary/Ten Hoeve Subcontract. Specifically, Ten Hoeve submitted product data for the KriStar product, which was approved by the owner, as required by the Prime Contract.

36.     Ten Hoeve knew that its representation to Gary and Limbach was false when made.

37.     Ten Hoeve knew or should have known that Gary and Limbach would rely upon its representation that it was supplying the KriStar product pursuant to the approved submittal.

38.     With intent to defraud, Ten Hoeve provided a different and inferior product that Ten Hoeve intentionally and knowingly mislabeled as a KriStar product by spray painting a taped on stencil cutout of a KriStar logo on the product actually supplied and installed.

39.     Limbach and Gary relied upon the aforementioned representations of Ten Hoeve.

40. Limbach and Gary have been damaged as a result of this fraudulent misrepresentation because of excess costs incurred in removing the improper product and installing the approved KriStar product as required by the terms of the Prime Contract.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

41. The allegations contained in Paragraphs 1 through 40 set forth above are incorporated herein by reference as is fully set forth.

42. Ten Hoeve owed a duty to Gary and to Limbach to perform its work in accordance with the requirements of the Prime Contract.

43. Ten Hoeve falsely represented that it would and did provide a KriStar FloGard Dual Vortex Catch Basin as part of the rainwater harvesting scope of work to be performed pursuant to the Gary/Ten Hoeve Subcontract.

44. In breach of the obligations owed, Ten Hoeve provided a different catch basin than the KriStar product submitted and approved.

45. Ten Hoeve had a duty to disclose to Gary and Limbach that it had supplied and installed a catch basin other than that specified by the Gary/Ten Hoeve Subcontract and the Prime Contract.

46. Limbach and Gary reasonably relied upon the false representations and/or omissions by Ten Hoeve.

47. Limbach and Gary were damaged as a result of this negligent misrepresentation because they incurred costs to remove the defective catch basin and to replace it with the proper KriStar product as required by the terms of the Prime Contract.

THEREFORE, Limbach requests a judgment against Ten Hoeve as follows:

A. Compensatory damages in excess of Seventy Five Thousand Dollars ($75,000.00);

B. Pre-judgment interest at the legal rate through the date of judgment and post-judgment interest thereafter;

C. Attorney's fees and costs; and

D. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

_____
Robert F. Carney (D.C. Bar No. 436999)
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
(410) 347-8726

_____
Jeffrey Seaman (D.C. Bar No. 466509)
Whiteford, Taylor & Preston L.L.P.
7501 Wisconsin Ave.
Suite 700W
Bethesda, MD 20814-6521
(301) 804-3610

*Attorneys for Plaintiff,*
*Limbach Company LLC*

*2103134*

8